MISSOURI, K. & T. RY. CO. OF TEXAS v. KENNON et al.

(Court of Civil Appeals of Texas. Galveston. Feb. 24, 1914.)

1. PLEADING (§ 403*)—OMISSIONS—CURE BY ANSWER.

Plaintiff's decedent, while riding in an ambulance, received fatal injuries in a collision between the ambulance and a railroad train at a crossing. Plaintiff sued the railroad company and the ambulance owner, without alleging that the railroad company was negligent in failing to keep a proper lookout, which allegation, however, was contained in the answer of the ambulance owner. Held, that such allegation in the answer did not cure plaintiff's failure to so charge so as to entitle her to recover against the railroad company on the theory of its failure to maintain a proper lookout.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1343–1347; Dec. Dig. § 403.*]

2. RAILROADS (§ 351*)—CROSSING ACCIDENT—INSTRUCTIONS.

Where, in an action for death of plaintiff's decedent in a collision between an ambulance, in which he was riding, and a railroad train at a crossing, plaintiff did not allege the omission to keep a proper lookout as negligence on the part of the railroad company, but such omission was pleaded in the answer of the defendant owner of the ambulance, an instruction that the law required those operating trains over crossings in the city to keep such a lookout to avoid injuring persons approaching the crossings as a person of ordinary prudence would keep under similar circumstances, etc., while abstractly correct and properly given on the theory of the defense pleaded by the ambulance owner, should have been so framed as not to apply the principle against the railroad company in favor of plaintiff.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1211, 1213–1215; Dec. Dig. § 351.*]

3. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

An instruction that the operators of trains over railway tracks across the streets of a city, in approaching crossings, are required to keep such a lookout to avoid injuring persons as a person of ordinary prudence would keep under similar circumstances, taking into consideration the character and extent of the use of the crossings by the public, was not objectionable as on the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

4. RAILROADS (§ 351*)—CROSSING ACCIDENT—CONCURRING CAUSE—INSTRUCTIONS.

Where plaintiff sued defendant railroad company and the owner of an ambulance for decedent's death in a collision at a crossing, and the railroad company pleaded and proved that the driver of the ambulance had defective sight, and that this was the cause of the collision, while the ambulance owner claimed that the injury was occasioned by the failure of the train operatives to keep a lookout for persons on the crossing, a request to charge that, if the jury believed that the ambulance driver had defective sight, and that the accident was caused or contributed to thereby, then the railroad company would not be liable was properly refused, as eliminating the effect of a finding that the driver's defective sight was but a concurring cause, in which event it would not prevent a recovery against the railroad company.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1211, 1213–1215; Dec. Dig. § 351.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by Matilda Kennon and others against the Missouri, Kansas & Texas Railway Company of Texas and another. Judgment for plaintiffs, and defendant the Missouri, Kansas & Texas Railway Company of Texas appeals. Reversed and remanded.

Alex S. Coke and A. H. McKnight, both of Dallas, and Lane, Wolters & Storey and W. A. Vinson, all of Houston, for appellant. Jones & Jones and Heidingsfelders, all of Houston, for appellees Kennon and Davis. Andrews, Ball & Streetman, of Houston, for appellee Sid Westheimer Co.

McMEANS, J. Rosa Davis, the widow, and Matilda Kennon, the mother of Lafayette Alvin Davis, deceased, joined by her husband, Nide Kennon, brought this suit against the Missouri, Kansas & Texas Railway Company of Texas, the Houston & Texas Central Railroad Company, and the Sid Westheimer Company to recover damages for the death of the said Lafayette Alvin Davis, who was killed in a collision between an automobile ambulance of the Sid Westheimer Company and a passenger train of the Missouri, Kansas & Texas Railway Company of Texas at Willow street crossing in the city of Houston.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

The plaintiffs alleged that on July 3, 1911, about 9 o'clock p. m., the decedent, Lafayette Davis, was being transported in an automobile ambulance of the Sid Westheimer Company from the corner of Hill and Glass streets, in the city of Houston, to the Houston Infirmary, he having been injured in a cutting affray; that the ambulance was proceeding along Willow street, which is crossed by the Missouri, Kansas & Texas Railway Company of Texas, the Houston & Texas Central Railroad Company, and other railways, and that, as the ambulance approached the crossing of the Missouri, Kansas & Texas Railway Company, it was struck by a passenger train of that road and was crushed and destroyed, and Lafayette Davis was thrown therefrom and killed.

As to the defendant the Missouri, Kansas & Texas Railway Company of Texas, the grounds of negligence were alleged substantially as follows: That, in approaching the Willow street crossing, the operatives of the train failed to stop said train before crossing the street, and failed to give any warning of the approach of the train by blowing the whistle and ringing the bell; that its employés whose duty it was to warn pedestrians and drivers of vehicles along Willow street of the approach of the trains failed to give any warning to the driver of the ambulance of the approach of the train, and failed to flag or stop the train so as to avert the injury; that they knew the train was approaching at a fast rate of speed, and that it was extra hazardous and dangerous for persons to attempt to cross the railroad track in front of the train; that, if they had given warning of the approach of the train to the driver of the ambulance, or had given the warning signals required by law, the injury would have been averted.

As to the defendant Sid Westheimer Company, the allegations were substantially that the operatives of the ambulance did not manage it with reasonable care and skill, in that while approaching the crossing they were going at a high rate of speed, and did not stop the ambulance, and failed to give any warning to Lafayette Davis of imminent danger, he being inside of the ambulance, and that on account of the carelessness and negligence of the said operatives the ambulance collided with the train, and thus caused the death of Davis.

The defendant railway company answered by a general denial, and specially alleged that at the time of the collision its train was being operated in a careful and skillful manner; that the usual signals were given as the train approached the crossing; that the bell was being constantly rung, and that the train was being run at a very low rate of speed, and in compliance with the ordinances of the city of Houston; that the operatives did not see the ambulance, and by the use of ordinary care could not have seen it in time to have avoided the collision. It was further alleged that the ambulance was being driven in a careless and reckless manner, at a high rate of speed, and, without any warning to those in charge of the train, dashed into the side of the engine; that the driver of the ambulance was reckless, careless, and incompetent, and in addition thereto his sight was extremely defective, and except for his recklessness and defective sight the collision would not have occurred. It was further alleged that the driver of the ambulance was warned and cautioned of the approach of the train, but disregarded the warnings, and attempted to run his machine across the track in front of the engine, and thereby caused the collision.

The defendant Sid Westheimer Company answered by general denial, and specially pleaded that the accident was not caused by reason of any negligence of its employés, but was caused by the negligence of the defendant the Missouri, Kansas & Texas Railway Company of Texas. It further answered that the defendant Missouri, Kansas & Texas Railway Company of Texas negligently failed to give the signals required by law as it approached the crossing; that the train was not stopped before reaching the crossing, nor was the same under such control that it could be brought to a stop before crossing Willow street, nor was it under such control that, in the event of probable injury to vehicles or pedestrians on said Willow street, it could be stopped in time to avert accident or injury; that the operatives of the train were not keeping a proper lookout, and that, after they discovered the approach of the ambulance, and the imminent danger and peril thereof, they failed to use the means at hand to prevent the injury; that the crossing at that place was very much used, and said defendant was negligent in not giving proper notice of the approach of its train.

A trial was had before a jury, and on the close of plaintiffs' evidence a dismissal was entered as to the Houston & Texas Central Railroad Company, and, proceeding as to the other defendants, the trial resulted in a verdict and judgment for the Sid Westheimer Company and against the Missouri, Kansas & Texas Railway Company of Texas in favor of Matilda Kennon for $1,000, and in favor of Rosa Davis for $500. From this judgment, the railway company has appealed.

The court, in the twenty-ninth paragraph of its general charge, instructed the jury as follows: "Now, bearing in mind the foregoing instructions, the court charges you that, if you believe from the evidence that on the occasion of the occurrence in question the servants of the defendant Missouri, Kansas & Texas Railway Company of Texas engaged in the operation of the train in question were not, in approaching the crossing in question, keeping such lookout as a person of ordinary prudence would have kept under the same or similar circumstances, considering the character and extent of the use of such crossing

by the public, and you further believe from the evidence that such failure on their part, if any, was the sole proximate cause of the death of Lafayette Alvin Davis, then and in such event you will let your verdict be in favor of the defendant Sid Westheimer Company."

In this connection the defendant railway company requested the court to give its third special charge, which reads as follows: "You are instructed that there is no allegation by plaintiffs that the agents of the Missouri, Kansas & Texas Railway Company of Texas in charge of the engine failed to keep a proper lookout for persons on or about to come on the track at the crossing; hence, even if you believe that such agents in charge of the engine at the time of the collision failed to keep such lookout, you cannot find against the Missouri, Kansas & Texas Railway Company of Texas."

The giving of the charge and the refusal to give the special charge above copied are made the basis of appellant's first assignment of error.

[1] While the defendant Sid Westheimer Company alleged that the agents of the defendant railway company negligently failed to keep a proper lookout for persons upon or approaching the crossing, no such allegation was made by the plaintiffs. The court's charge was not of itself erroneous as to the defendant Sid Westheimer Company, for, standing alone, it instructed the jury to find in favor of said defendant, if they believed that the agents of the railway company were not keeping such a lookout as ordinary care required in the circumstances, and that the failure to exercise such care was the proximate cause of the death of the deceased. But, having given this charge, the court, in the state of the pleadings referred to, should have also instructed the jury, in order to avoid any confusion in their minds, that the failure of the agents of the railway company to exercise such care would not of itself authorize a recovery by plaintiffs against the railway company, and, having failed to instruct the jury in the general charge, it should have given the special charge referred to, and the failure to do so is reversible error.

But appellees, while admitting the absence from their pleadings of any allegation of negligence of the railway company's agents in failing to keep a proper lookout, contend that, where the defendant railway company affirmatively charged in its answer that its said agents did not see the ambulance, and that by the use of ordinary care they could not have seen it in time to stop the train and avoid the collision, and where the Sid Westheimer Company alleged in its answer in reply to the answer of the defendant railway company that the agents of the railway company operating the engine and train were not keeping a proper lookout, the defect in plaintiffs' petition due to the absence of

such allegation was cured, and that the issue thus formed became available to plaintiffs. This contention is without merit. When the Sid Westheimer Company, in attempting to escape liability to plaintiffs, charged that the damages sued for were caused solely by the negligence of the railway company's agents in failing to keep a proper lookout, it was alleging its own defense to plaintiffs' suit, and not a cause of action for plaintiffs, and therefore it was entitled to an instruction, conceding that the evidence authorized it, that, if there was such failure, and that the same was negligence, and was the sole proximate cause of the collision, the Sid Westheimer Company would not be liable; but certainly this defense pleaded by said defendant could not be available to plaintiffs as supplying the omission of such allegation in their petition. Nor do we think that the allegation of the railway company cured the omission of the petition in the regard mentioned. The negative allegation of the railway company that its agents did not see the ambulance, nor by the exercise of ordinary care could they have seen it in time to stop the train and avoid the collision, cannot be looked to to supply the want of any affirmative allegation on the part of plaintiffs as a basis for their cause of action that said defendant was negligent in this respect.

[2] The court, in the twenty-eighth paragraph of its charge, instructed the jury as follows: "The law requires those engaged in operating trains of cars over railway tracks across the streets of a city shall, in approaching such crossings, keep such lookout to avoid injuring persons using such crossings as a person of ordinary prudence would keep under the same or similar circumstances, taking into consideration the character and extent of the use of such crossings by the public."

This charge is abstractly correct, and was properly given on the theory of the defense pleaded by the Sid Westheimer Company; but we think the court should have so framed its charge as to apply the principle to that defendant's defense alone, otherwise it was calculated to lead the jury to the erroneous conclusion that the failure of the railway's employés to use the care defined was such negligence towards the deceased Davis as entitled plaintiffs to a recovery, when in fact such negligence was not pleaded or relied upon by them.

[3] There is no merit in the further contention under this assignment that the charge is on the weight of the evidence. Railway v. Pendery, 14 Tex. Civ. App. 60, 36 S. W. 794.

[4] Appellant requested the court to charge the jury as follows: "If you believe from the evidence that the driver of the ambulance had defective eyesight, and that the collision was proximately caused or contributed to by or on account of such defective eyesight, you are instructed that the

Missouri, Kansas & Texas Railway Company of Texas is not, under such circumstances, liable to plaintiffs, and, if you so believe, your verdict should be for the railway company."

The refusal of the court to give this charge is the ground of the seventh assignment of error.

The appellant pleaded that the collision occurred on account of the defective eyesight of the driver of the ambulance, and on the trial proved that his eyesight was defective. It was shown that the deceased, having been injured, was being conveyed to the Infirmary, and that he was riding in the ambulance under such circumstances and in such position as that the negligence of the driver was not imputable to him. If the driver was solely to blame for the collision, his principal, and not the railway company, should have been held responsible for the consequences that ensued. But, if the defectiveness of the driver's eyesight was only a concurring cause, that is to say, if the negligence of the Sid Westheimer Company in intrusting the ambulance to a driver with defective eyesight concurred with the negligence of the railway company in any of the particulars alleged by plaintiffs and proved on the trial, the railway company was not thereby exonerated from responsibility to plaintiffs, and the charge requested, having ignored this principle, was properly refused. San Antonio v. Porter, 24 Tex. Civ. App. 444, 59 S. W. 927; Railway v. Sweeney, 14 Tex. Civ. App. 216, 36 S. W. 800; O'Connor v. Andrews, 81 Tex. 28, 16 S. W. 628.

We have carefully examined all of appellant's assignments of error, and, except as above indicated, none of them presents grounds for reversal.

Because of the errors indicated, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.