KIRBY LUMBER CO. v. HAMILTON.

(No. 6692.)

(Court of Civil Appeals of Texas. Galveston. Oct. 22, 1914. Rehearing Denied Dec. 10, 1914.)

1. MASTER AND SERVANT (§ 116*)—INJURIES TO SERVANT—SAFE PLACE TO WORK.

Where defendant lumber company maintained an unrailed platform 16 or 18 feet high, on which its employés were required to move heavy timbers, and plaintiff was injured by being knocked off the platform while so engaged, defendant failed to provide plaintiff with a safe place to work in omitting to provide the platform with a guard rail.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

2. MASTER AND SERVANT (§ 129*)—INJURIES TO SERVANT—SAFE PLACE TO WORK—ABSENCE OF GUARD RAILS.

Where plaintiff, an employé of a lumber company, was knocked from a high platform and injured while assisting a fellow employé in moving heavy timbers on the platform, which was not equipped with a guard rail, defendant could have reasonably anticipated that the absence of a guard rail would result in injury to employés required to work under such circumstances, it only being necessary, to make defendant's negligence in failing to provide such rail the proximate cause of plaintiff's injury, that it could

be found that injury to some person put to work on the platform might reasonably be anticipated as the result of the absence of the rail, and not that the precise accident that happened or that injuries would occur in the precise manner in which they did should have been reasonably anticipated.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

3. MASTER AND SERVANT (§ 201*)—INJURIES TO SERVANT — NEGLIGENCE — SAFE PLACE — FELLOW SERVANT — CONCURRENT NEGLIGENCE.

Where an employer's negligence in failing to provide an employé with a safe place to work was the proximate cause of the employé's injury, the employer's liability was not affected by the fact that the injury was the result of the employer's negligence, combined with the concurrent negligence of a fellow employé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 515–534; Dec. Dig. § 201.*]

4. MASTER AND SERVANT (§ 208*)—INJURIES TO SERVANT—ASSUMED RISK.

Where plaintiff, a minor employed at defendant's mill, was ordered to assist a negro in moving heavy pieces of lumber on a platform 16 feet from the ground, which was unguarded by a rail, without warning, the fact that plaintiff knew that the platform was a considerable distance from the ground was not sufficient to charge him with assuming the risk of working thereon without protection.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 551; Dec. Dig. § 208.*]

5. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries to an employé by being thrown from an unguarded elevated platform in the course of his employment, whether he was guilty of contributory negligence held for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

6. DAMAGES (§ 132*) — EXCESSIVENESS — PERSONAL INJURY.

Plaintiff, 19 years of age and earning $1.50 a day, while assisting a fellow employé in moving certain heavy timbers on an unguarded elevated platform, was thrown to the ground, breaking his right thigh. He was in bed about three months, and suffered and still continued to suffer great physical pain, and at the trial testified that his leg hurt him to such an extent in bad weather that he could not work at all. The bones united, but his right leg was 1½ inches shorter than his left, leaving him a permanent cripple. Held, that a verdict allowing him $8,500 from which he remitted $412, was not so excessive as to indicate passion and prejudice of the jury.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Appeal from District Court, Hardin County; L. B. Hightower, Judge.

Action by Reese Hamilton, by his next friend, against the Kirby Lumber Company. Judgment for plaintiff, and defendant appeals. Reformed and affirmed.

Andrews, Streetman, Burns & Logue, of Houston (John G. Logue and W. L. Cook, both of Houston, of counsel), for appellant. Blain & Howth, M. G. Adams and Ralph Durham, all of Beaumont, for appellee.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

PLEASANTS, C. J. This suit was brought by appellee against appellant to recover damages for personal injuries alleged to have been caused by the negligence of appellant. Several grounds of negligence were pleaded, but the only question of negligence submitted to the jury was whether defendant had used reasonable care to furnish plaintiff with a safe place in which to work. Defendant answered by denying the several allegations of negligence contained in the petition, and specially pleaded that the place referred to in plaintiff's petition was constructed and arranged in the usual and customary manner of places in which the work required of plaintiff was usually performed. It further pleaded that defendant was under no obligation to warn plaintiff of any danger that might attend the performance of his work in such place, but that plaintiff was warned of such danger. Assumed risk and contributory negligence on the part of plaintiff were also pleaded by the defendant. The evidence shows that at the time of the accident in which plaintiff received his injuries he was employed by the appellant and was engaged in moving heavy pieces of lumber, which were piled upon an elevated platform or scaffold at appellant's sawmill. This platform was 16 or 18 feet high, and at the place where plaintiff was put to work there was no railing around the edge of the platform. Plaintiff, who was a minor about 19 years old and weighed only 95 pounds, was directed by Mr. Miller, a vice principal of appellant, to go upon this platform and assist a negro employé of appellant in placing the lumber thereon on a skid by means of which it was slided onto trucks. In handling a piece of lumber 32 feet long, 16 inches wide, and 3 inches thick, plaintiff was knocked over the edge of the platform, and fell to the ground, and thereby received the injuries for which this suit was brought.

Plaintiff testified:

"At the time of the accident I had not noticed the height of the platform, though I did notice it afterwards. I never noticed it before. I noticed it after I got up from my injuries caused by the fall. The platform was between 16 and 18 feet from the ground. The work I was doing required me to be about 3 feet from the edge of the platform. There were no rails around the platform to guard or to keep people from falling off where we were working along there. Lumber was stacked all around the edge of the platform in the neighborhood of where we were working. They pulled this lumber out to the edge of the platform on trucks; they did not have any live rollers there. * * * While we were doing that work I got knocked off the platform. At the time it happened the negro and I were handling the timber, and the negro gave it a quick jerk, and pulled it around, and knocked me off. He jerked one end of the timber, and the timber was suspended in the center on a skid, and he gave a quick jerk on his end, which swung my end around, and threw me off. Yes, it knocked me off, and I fell to the ground from the top of the timber deck, a distance of from 16 to 18 feet. I did not know that the place where I was at work was a dangerous place, and nobody explained the danger to me, and nobody showed me how to avoid the dangers. I was not strong enough to do that work. The foreman told me to go ahead that day, and he would put me back to my old job to-morrow; that is what he said to me when I told him I was not able to do that work. What I said to him about my ability to work, that is, about having been sick, I told him I was not able to do the work, it was too heavy for me, and he told me to go ahead that day. I did tell him about being sick, and about having been sick, and I was sick most of the time up to that time. I did tell him the work was too heavy for me. Then he told me to go ahead, and it would be all right that day, that he would put me back to my old job the next day. He said I could do the work that day. * * *

"Going back to the time of the accident, it happened this way: I was on one side of a piece of lumber, shoving it; I was not strong enough, and had to go back behind it and shove it. The negro at the other end gave it a quick jerk and threw me off. My back was to the edge of the dollyway where I fell off. * * * I was fixing to push it when the accident occurred. The negro gave the piece a quick jerk and slipped me off. If I had been strong enough to pull that plank without getting behind it and shoving it, this would have aided me on that occasion, and prevented the accident. I did get behind it and attempt to shove it, and this man slipped me off. I do not know the name of the negro; he was a transient negro, just come in there. I did not know anything about him."

Eugene Hamilton, plaintiff's brother, testified as follows:

"I was present on the occasion when Mr. Miller told my brother to go over and help that negro load the timber. He did not give him any warning about the danger and how to avoid it. When Mr. Miller told my brother to go over there and help get this timber out, my brother told him he could not handle the timber, and Mr. Miller said it would be all right to work the balance of that evening, it was only a very short time to quitting time, and he told him it would not hurt him to do it just that evening. * * * The way that negro did his work he just jerked things around in a violent and rough manner. My brother was very small. I had not noticed that negro at all up to that morning. I had not noticed him before that morning. * * * I saw my brother knocked off of the platform. The platform did not have any guard rails or any other safety appliances or devices."

[1] We cannot agree with appellant in the contention that the evidence before set out is insufficient to sustain the finding of the jury that appellant was negligent in not providing plaintiff a safe place in which to work. It certainly cannot be held as a matter of law that a platform 16 or 18 feet high and without any guard rail around its edge is a safe place on which to handle pieces of lumber of such size as to require two persons to move them and it is necessary for the persons so engaged to work near the unguarded edge of the platform. There is nothing in this evidence tending to show that it was impractical to have a guard rail around the platform, and it is manifest that a rail in such place would afford protection to workmen who were required to work near the edge and would have rendered the place much safer for such work. We think upon the evidence the jury were authorized to find that the appellant was negligent in not providing plaintiff with a safe place in which to perform his work, and the first assignment

of error which complains of the verdict upon this issue, on the ground that it is not supported by sufficient evidence, cannot be sustained.

[2] The second assignment complains of the verdict on the ground that there is no evidence from which the jury were authorized to find that the alleged negligence of the appellant submitted to them by the charge of the court was the proximate cause of plaintiff's injury. The fourth assignment complains of the refusal of the court to instruct the jury to return a verdict for the appellant on the ground that the undisputed evidence shows that the negligence of plaintiff's fellow servant was the proximate cause of plaintiff's injury. Neither of these assignments can be sustained. We think it could have been reasonably anticipated by appellant that the absence of a guard rail around this platform would result in injury to its employés who were required to work near the edge of the platform by their falling or being accidentally knocked therefrom while moving lumber thereon. It is not necessary, in order to hold appellant liable for plaintiff's injuries, that it should have anticipated that the accident in which plaintiff received his injuries would occur in the precise manner in which it did, nor that such accident would result in the particular injuries received by plaintiff. All that was required to make appellant's negligence the proximate cause of the injury to plaintiff was a reasonable anticipation that injury to some person put to work by it on said platform might result from its negligence. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Ry. Co. v. McComus, 36 Tex. Civ. App. 170, 81 S. W. 760.

[3] The negligence of appellant being a proximate cause of plaintiff's injury, appellant's liability is not affected by the fact that such negligence was combined with the concurrent negligence of a fellow servant. Ry. Co. v. Sweeney, 14 Tex. Civ. App. 216, 36 S. W. 800; Ry. Co. v. Brown, 46 S. W. 926.

[4] Plaintiff being a minor and appellant having failed to warn him of the danger attending his work on the platform due to the absence of a guard rail, the rule as to his assumption of the risk of such danger is not the same as the rule applicable to an adult, and it was for the jury to determine from all the evidence whether he had sufficient knowledge and appreciation of the danger and its extent to exempt appellant from liability for his injury. He testified that he had not noticed the height of the platform from the ground, and did not know the place was dangerous, nor the danger of the work in which he was engaged. There is no evidence that he was mentally deficient, or that his eyesight was not that of a normal person, and it is hard to believe that he could have worked near the edge of this platform for the length of time he did and fail to observe its height, but a mere knowledge of the fact that the platform was a considerable distance from the ground is not sufficient to charge him with assuming the risk of performing his work thereon. He must, to be so charged, have realized the extent of the danger to which he was exposed from the height of the platform, the absence of a railing, and the character of the work he was called upon to perform thereon. The court did not err in refusing to instruct the jury to return a verdict in favor of appellant on the ground that upon the evidence plaintiff should, as a matter of law, be held to have assumed the risk of receiving the injuries sustained by him, and appellant's third assignment, which complains of the refusal of the court to so instruct the jury, is overruled. Ry. Co. v. Brick, 83 Tex. 598, 20 S. W. 511.

[5] The fifth assignment complains of the refusal of the trial court to instruct the jury to return a verdict for the defendant on the ground that plaintiff was guilty of contributory negligence. We think the issue of contributory negligence was properly submitted to the jury, the evidence not being such as to compel the finding that plaintiff was guilty of such negligence. The assignment is overruled.

[6] The jury fixed the amount of plaintiff's damage at $8,500, of which amount plaintiff remitted the sum of $412. The sixth assignment complains of this verdict as excessive. The evidence shows that plaintiff's right thigh was broken by his fall from the platform, and while the bones have again united his right leg is about 1½ inches shorter than his left, and he is a permanent cripple. He was in bed about three months, and suffered and still suffers physical and mental pain as the result of his injuries. He testified that his leg hurt him to such an extent in bad weather that he could not work at all. At the time of his injury he was receiving $1.50 per day for his work. While the verdict of the jury is liberal, it is not so unreasonably large as to justify the conclusion that, in fixing the amount of plaintiff's compensation, the jury was influenced by passion, prejudice, or any improper motive, and therefore we are not authorized to substitute our judgment for that of the jury as to the amount to which plaintiff is entitled.

By an agreement signed by counsel for both parties it is made to appear that an error occurred in the entry of the judgment in the court below, in that the judgment as entered was for a less amount than the verdict of the jury after deducting therefrom the remittitur of $412, filed by the plaintiff, and appellant agrees that, in event the judgment is affirmed, it shall be reformed so as to award plaintiff the amount found by the jury, less the remittitur.

It follows from our conclusions upon the assignments above discussed that the judgment should be affirmed, and in accordance

with the agreement above stated should be reformed; and it is so ordered.

Reformed and affirmed.